**2026 UT App 110**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
HEATH WADE ANDERSON,
Appellant.

Opinion
No. 20240323-CA
Filed July 23, 2026

Eighth District Court, Duchesne Department
The Honorable Samuel P. Chiara
No. 211800371

Lyla Mahmoud, Debra M. Nelson, Benjamin Miller,
and Wendy M. Brown, Attorneys for Appellant

Derek E. Brown and Natalie M. Edmundson,
Attorneys for Appellee

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES RYAN M. HARRIS and JOHN D. LUTHY concurred.

CHRISTIANSEN FORSTER, Judge:

¶1　In November 2021, the State charged Heath Wade Anderson with two counts of aggravated child sexual abuse. At the time the charges were filed, Anderson was incarcerated on another criminal matter and for allegedly violating his parole. But Anderson did not appear before the district court on the child sex abuse charges until September 2022—approximately ten months after the information was filed. Once Anderson appeared in court, the case proceeded through repeated hearings, continuances, plea negotiations, and motion practice over the next seventeen months.

¶2     Nine months after he first appeared, Anderson moved to dismiss the charges on the grounds that the State had violated his Sixth Amendment right to a speedy trial. Anderson argued that he had been prejudiced by the State's delay in bringing him to trial because the unresolved charges allegedly affected parole proceedings before the Utah Board of Pardons and Parole (the Board) and deprived him of the opportunity to negotiate a more favorable global plea agreement. The district court disagreed. Applying the four-factor framework articulated in *Barker v. Wingo*, 407 U.S. 514 (1972), the court concluded that Anderson's claimed prejudice was speculative and that, under the totality of the circumstances, his constitutional speedy trial right was not violated. After entering a conditional guilty plea, Anderson now appeals that decision, and we affirm.

BACKGROUND[1]

¶3     On November 1, 2021, the State filed an information in Duchesne County charging Anderson with multiple offenses based on allegations that he sexually abused two young family members. At the time the charges were filed, Anderson was already incarcerated on unrelated matters involving a pending Uintah County case, as well as on parole violation issues stemming from an earlier conviction in Uintah County.

¶4     Although the information was filed in November 2021, Anderson did not appear before the district court until September 6, 2022. Although the details are not entirely clear, the record suggests that this initial ten-month delay resulted from lack of administrative oversight, the misspelling of Anderson's name,

---

1. We recite the facts relevant to Anderson's speedy trial claim based on the district court's findings and the information in the record that accords with those findings. *See State v. Hintze*, 2025 UT 3, n.1, 567 P.3d 506.

and general negligence rather than deliberate misconduct by the State. During this ten-month period, Anderson was charged with another offense in Uintah County, he resolved both of his pending Uintah County cases with a plea deal, and he was sentenced in those cases to two concurrently running jail terms of 364 days.

¶5     After Anderson appeared in this case in September 2022, the matter proceeded through a series of hearings, scheduling conferences, and continuances. Specifically, on September 14, Anderson's defense attorney (Counsel) requested that a scheduling conference be continued until October 3. At the October 3 hearing, Anderson requested a preliminary hearing, which the district court scheduled for October 12. But on October 11, the State moved to continue the preliminary hearing to October 17, and Counsel stipulated to the request. At the October 17 hearing, Counsel requested another continuance so that investigators could review materials related to the allegations. The court continued the preliminary hearing until November 14. Before that hearing occurred, the State moved to continue the matter to November 28 so that both parties would have additional time to prepare, and Counsel again stipulated to the request.

¶6     The preliminary hearing was later continued two more times at Counsel's request. On November 28, Counsel requested additional time to prepare, and the district court continued the hearing until December 12. On December 12, Counsel requested another continuance, and the hearing was reset for December 20. The court conducted the preliminary hearing on December 20 and later entered a bindover order in January 2023. The case then proceeded toward trial.

¶7     In February 2023, the trial was continued while the parties addressed discovery issues. Shortly thereafter, Anderson requested a jury trial, and the district court scheduled trial for April 2023. But in March 2023, Counsel moved to continue the

trial date because a defense expert was unavailable. The court granted the motion and reset trial for June 2023.

¶8      In May 2023, Anderson wrote a letter to the district court requesting a court appearance and expressing frustration with the delays. Around the same time, Counsel resigned as a public defender and replacement counsel was appointed. But following disagreements with replacement counsel, Anderson personally asked the court to continue the matter. Per the parties' request, the court then vacated the June trial date. A third attorney was subsequently appointed to represent Anderson.

¶9      On June 27, 2023, Anderson moved to dismiss the charges for a constitutional speedy trial violation. Anderson argued that the delay had prejudiced him because the unresolved charges had allegedly affected his parole violation proceedings before the Board. He also argued that an earlier appearance in this matter might have allowed him to include this case in the plea resolution of the Uintah County matters.

¶10     The State opposed the motion. The State argued that because the delay between the filing of the information and Anderson's initial appearance was not a deliberate act taken by the State, it should not be given great weight in the speedy trial analysis. As to the remaining delay, the State argued that much of it resulted from defense-requested continuances, stipulated continuances, the appointment of new defense counsel, and ordinary scheduling issues. The State also argued that Anderson's claimed prejudice was largely speculative because it was "not possible to determine whether" Anderson would still have been incarcerated on the Uintah County cases and the parole violation even without the delays in the instant case.

¶11     The parties thereafter litigated the motion to dismiss over the next several months. During this period and based upon his convictions in the two Uintah County cases, the Board revoked

Anderson's parole and he remained incarcerated. In September 2023, the district court denied Anderson's motion to dismiss. The court concluded that the delay was sufficient to trigger the analysis required under *Barker v. Wingo*, 407 U.S. 514 (1972), but that an analysis of the factors set forth in *Barker* did not establish a constitutional violation. The court observed that Anderson was "responsible for the great majority of all delays during the ten months after his initial appearance." The court also concluded that Anderson had failed to establish concrete prejudice resulting from the delay. The court scheduled trial for December 2023.

¶12    But in October 2023, Anderson's new attorney again moved to continue the trial because a defense expert was unavailable for the scheduled trial dates. The district court granted the motion and reset trial for February 2024. Before trial occurred, the parties resolved the case through a negotiated plea agreement. On February 20, 2024, Anderson pleaded guilty to a reduced charge, reserving his right to appeal the denial of his motion to dismiss. At the sentencing hearing in March, the State advised the court that its favorable offer and sentencing recommendation were partly based on "the amount of time Mr. Anderson ha[d] served incarcerated since this offense happened" but that it did not anticipate that he would be released because of his pending parole violations. The court imposed a suspended prison term and placed Anderson on probation.

ISSUE AND STANDARD OF REVIEW

¶13    Anderson now appeals and challenges the district court's denial of his motion to dismiss, which was based on an alleged violation of the Sixth Amendment right to a speedy trial. "Whether a defendant's right to a speedy trial has been violated is a question of law reviewed for correctness." *State v. Hintze*, 2025 UT 3, ¶ 38, 567 P.3d 506 (quotation simplified).

ANALYSIS

¶14    The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to a speedy trial. *See* U.S. Const. amend. VI. This right is a "fundamental" one and "is imposed by the Due Process Clause of the Fourteenth Amendment on the States." *State v. Younge*, 2013 UT 71, ¶ 16, 321 P.3d 1127 (quotation simplified). But it is also an "amorphous, slippery, and necessarily relative" right, *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (quotation simplified), and it is one that "must take into account the defendant's rights as well as the rights of public justice," *State v. Samora*, 2022 UT App 7, ¶ 18, 504 P.3d 195 (quotation simplified).

¶15    Courts evaluate claimed violations of the speedy trial right under the four-factor balancing test announced in *Barker v. Wingo*, 407 U.S. 514 (1972). Those factors are (1) the length of the delay, (2) the reason for the delay, (3) the circumstances under which the defendant asserted the right, and (4) prejudice to the defendant. *See id.* at 530. No single factor controls the analysis. *See id.* at 533. Courts instead consider the factors together, along with the particular circumstances of the case. *See id.* And "the only possible remedy" for a violation of the speedy trial right is "the unsatisfactorily severe remedy of dismissal of the indictment." *Id.* at 522. We discuss each *Barker* factor individually below and then balance them against one another.

## I. Length of the Delay

¶16    The first *Barker* factor, the length of the delay, "is actually a double enquiry." *Doggett v. United States*, 505 U.S. 647, 651 (1992). It first examines whether the delay was sufficiently long to trigger constitutional concern and, if so, "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Id.* at 652.

¶17    Here, approximately twenty-seven months elapsed between the filing of the information on November 1, 2021, and the entry of Anderson's guilty plea on February 20, 2024. That delay was sufficient to trigger a full *Barker* analysis. *See id.* at 652 n.1 (explaining that delays approaching one year generally trigger further constitutional review); *see also State v. Younge*, 2013 UT 71, ¶ 18, 321 P.3d 1127 (recognizing "that a delay approaching one year is presumptively prejudicial"). But the extent to which the delay stretched beyond that needed to trigger constitutional concern was not particularly egregious given the circumstances of this case, which we discuss more fully below. *See Doggett*, 505 U.S. at 652 (labeling a delay of over eight and a half years "extraordinary"); *Barker v. Wingo*, 407 U.S. 514, 533 (1972) (stating that a delay of "well over five years" between arrest and trial "was extraordinary"). Accordingly, while the length of the delay weighs in Anderson's favor, it does so only slightly.

## II. Reason for the Delay

¶18    The second *Barker* factor examines the reason for the delay and assigns different weight to different types of delay. *See Barker v. Wingo*, 407 U.S. 514, 531 (1972). Deliberate attempts by the State to delay prosecution in order to gain a tactical advantage weigh heavily against the government, while negligent or administrative delays carry less weight. *See id.* Delays attributable to the defense ordinarily weigh against the defendant. *See Vermont v. Brillon*, 556 U.S. 81, 90–91 (2009).

¶19    A substantial portion of the delay in this case resulted from the ten-month period between the filing of the information and Anderson's initial appearance on September 6, 2022. And the State acknowledges responsibility for that delay. But the record suggests that this delay resulted from either lack of administrative oversight or other general negligence rather than deliberate misconduct. And nothing in the record indicates that the prosecution intentionally delayed the proceedings to gain a

tactical advantage or to hamper Anderson's defense. Under *Barker*, negligent delay still weighs against the State, though less heavily than does purposeful delay. *See Barker*, 407 U.S. at 531.

¶20    And the remaining delays during the next seventeen months were simply the standard scheduling delays associated with most criminal cases. Once Anderson appeared before the district court, the case became active and involved repeated hearings and litigation on the motion to dismiss. Several continuances were requested by Counsel. Those requests included continuances to review discovery, allow new counsel time to prepare for trial, and accommodate the availability of a defense expert. Counsel also requested continuances of the preliminary hearing as well as the scheduled trial dates. Other delays resulted from stipulated continuances. But nothing in the record suggests that those delays resulted from bad faith by the State. Indeed, they reflect ordinary scheduling and case-management difficulties that carry comparatively little constitutional weight. *See id.*

¶21    The record also reflects additional scheduling disruption after Counsel resigned in May 2023 and replacement counsel appeared. Anderson personally asked for further delay over conflicts with replacement counsel, requiring a third attorney to appear. Anderson argues that this delay should be weighed against the State because Counsel resigned prematurely and the State or the district court should have required Counsel to complete the jury trial scheduled for June. However, when weighing delays caused by assigned counsel, only exceptional delays resulting from a "breakdown in the public defender system" can be charged to the State. *Brillon*, 556 U.S. at 85, 94 (quotation simplified). Anderson is correct that Counsel resigned weeks before the June 2023 trial, but the resignation of one public defender, even in a rural community, does not amount to a systemic breakdown. And neither the court nor the State could

have forced Counsel to keep working as a public defender despite his resignation.

¶22 In short, the State bears responsibility for the initial ten-month delay, and that delay weighs against the State. But the remaining delays resulted largely from defense requests, stipulated continuances, litigation, and ordinary scheduling issues rather than deliberate prosecutorial misconduct or systemic defense problems. Accordingly, this factor weighs only slightly in favor of a speedy trial violation.

### III. Assertion of the Right

¶23 The third *Barker* factor examines when and how strongly the defendant asserted the right to a speedy trial. *See Barker v. Wingo*, 407 U.S. 514, 531 (1972). "The defendant's assertion of his [or her] speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Id.* at 531–32. At the same time, courts consider the timing and circumstances of the assertion when determining how much weight to assign to this factor. *See id.*

¶24 Here, while Anderson affirmatively asserted his desire for court action and complained about the delays in this case, which weighs in his favor, he did not do so right away. It was not until May 2023—eight months after his initial appearance—that Anderson wrote a letter to the district court "requesting a court appearance" and expressing frustration with the delays in the proceedings. Seven weeks after that, Anderson filed his motion to dismiss based on speedy trial grounds. Even if the May letter did not expressly invoke the Sixth Amendment and failed to use the phrase "speedy trial," *see id.* at 528–29, the filing of the motion made Anderson's intent clear. *See State v. Hintze*, 2025 UT 3, ¶ 62, 567 P.3d 506 (recognizing that courts evaluate whether the defendant's conduct demonstrated a desire for prompt resolution, not whether the defendant used specific words).

¶25    But the timing and context of Anderson's assertion preclude this factor from weighing in his favor. Anderson did not assert the right until approximately eighteen months after the information was filed and after the case had already proceeded through numerous hearings and continuances. And even after Anderson sent his May 2023 letter, he personally requested a continuance after conflicts arose with replacement counsel. The extent to which a defendant is harmed by the deprivation of a speedy trial can manifest itself in how strongly the defendant asserts the right. "The more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531. Here, Anderson did complain about how long the process was taking, but he both took his time in making those complaints and personally requested further delay after he finally made his complaints.

¶26    Thus, although Anderson did assert his speedy trial right, his conduct throughout the proceedings reflected a continued willingness to request his own continuances and accept additional delays while the case remained active. Under these circumstances, we view this factor as neutral.

### IV. Prejudice to the Defendant

¶27    The final *Barker* factor examines whether the defendant suffered prejudice as a result of the delay. *Barker v. Wingo*, 407 U.S. 514, 532 (1972). The Supreme Court has identified three interests protected by the speedy trial right: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* The last interest is the most serious because impairment of the defense "skews the fairness of the entire system." *Id.*

¶28    As an initial matter, we note that Anderson does not claim that the delay impaired his ability to defend against the charges.

He identifies no lost witnesses, unavailable evidence, faded memories, or diminished ability to prepare a defense. Nor does the record suggest that the delay affected the reliability or fairness of the proceedings themselves.

¶29    Instead, Anderson argues that the delay prejudiced him in two ways. First, he contends that these unresolved charges negatively affected his parole proceedings before the Board. Second, he argues that had he been aware of this charge earlier, he could have resolved this case in the plea agreement he reached with the State regarding the Uintah County cases, an event he claims would have "result[ed] in less time incarcerated overall."

¶30    But under *State v. Hintze*, 2025 UT 3, 567 P.3d 506, such speculative prejudice carries little constitutional weight. The defendant in *Hintze* was charged while he "was serving a prison sentence for a separate offense," but he was not notified of the newer charge until two years later, "when he claims he was being considered for parole on the separate offense." *Id.* ¶ 1. The defendant asserted prejudice due to this two-year delay, claiming that he would have been granted parole at the earlier point had the pending charge been more timely resolved. *See id.* In addressing this assertion of prejudice, our supreme court explained that prejudice in the speedy trial context, "unlike prejudice requirements in other contexts, . . . is not a component of a claim that must be proven to secure relief." *Id.* ¶ 79. Rather, prejudice in the speedy trial context "exist[s] along a spectrum." *Id.* ¶ 80. "The more significant the prejudice and more certain the proof, the more weight the factor should be given." *Id.* Conversely, "the less significant or more speculative the prejudice, the less weight, if any, it deserves." *Id.* In applying this reasoning to the case before it, the court ultimately determined that there was "nothing in the record upon which to conclude that parole was anything more than a possibility" and that the defendant's claim was "too speculative to warrant weighing the prejudice factor in his favor." *Id.* ¶¶ 86, 88.

¶31 The prejudice Anderson identifies also falls on the speculative end of the prejudice spectrum. Although Anderson points out that the Board continued several of his hearings while this case remained pending, the record does not establish that Anderson likely would have been released from incarceration absent the delayed prosecution of this case. The Board retained broad discretion regarding parole decisions. *See Lancaster v. Utah Board of Pardons*, 869 P.2d 945, 947 (Utah 1994). And Anderson remained incarcerated throughout the relevant period because of both the Uintah County matters and the alleged parole violations stemming from his convictions on those cases. Thus, even assuming that these charges would have been relevant to the Board's consideration, the record does not conclusively show that the pendency of this case prolonged Anderson's incarceration or deprived him of earlier release. *See Hintze*, 2025 UT 3, ¶¶ 83–88.

¶32 The same is true of Anderson's global-plea argument. Anderson contends that had he known about these charges sooner, he might have negotiated a more favorable global resolution involving not only the Uintah County cases but also this case. But that argument depends upon multiple layers of speculation, including assumptions about prosecutorial decision making, plea negotiations, judicial approval, sentencing outcomes, and parole consequences. Nothing in the record establishes that earlier resolution of this case likely would have reduced Anderson's custodial exposure or altered the ultimate outcome of the Uintah County matters.

¶33 Indeed, the final resolution of this case substantially undermines Anderson's claim of concrete prejudice. Anderson ultimately pleaded guilty to a reduced third-degree felony offense, and the district court suspended his prison sentence and placed him on probation. The State acknowledged that the favorable plea deal and sentencing recommendation were based partly on the delay in this case and the two-and-a-half years he had already been incarcerated. Anderson therefore cannot show

that the delayed prosecution resulted in additional incarceration attributable to this case or caused him to lose an opportunity for concurrent sentencing.

¶34    In short, under *Hintze*, speculative parole consequences and hypothetical plea outcomes carry limited constitutional significance absent concrete proof that the delay prolonged incarceration or impaired the defense. Because Anderson failed to make that showing here, the prejudice factor weighs heavily against him.

## V. Balancing the *Barker* Factors

¶35    The final task for us in evaluating Anderson's speedy trial claim is to balance the relevant factors. Balancing the *Barker* factors, we conclude that Anderson has not established a violation of his constitutional right to a speedy trial.

¶36    The first two factors weigh somewhat in Anderson's favor, but only slightly. Because the delay was over one year, it was sufficient to trigger constitutional review, but the case did not extend an extraordinary amount of time beyond that triggering amount. And the reasons for the delay weigh only slightly in Anderson's favor as well.

¶37    But those factors do not carry substantial weight under the circumstances presented here. The record does not reflect deliberate prosecutorial delay or an attempt to gain a tactical advantage. Once Anderson appeared before the district court, the case remained active through repeated hearings, continuances, motion practice, and substitution of counsel. Much of the post-appearance delay resulted from defense requests, stipulated continuances, scheduling issues, expert availability, counsel-transition issues, and litigating the motion to dismiss rather than prosecutorial inactivity or bad faith.

¶38   Most importantly, Anderson failed to demonstrate concrete prejudice resulting from the delay. As with the prejudice claimed by the defendant in *Hintze*, Anderson's claimed prejudice depends largely on speculation regarding hypothetical plea negotiations and release by the Board. *See State v. Hintze*, 2025 UT 3, ¶¶ 83–88, 567 P.3d 506. Although Anderson points to several continued parole-violation hearings while this case remained pending, the record does not establish that he likely would have obtained release from incarceration absent this delayed prosecution. Anderson remained incarcerated because he was serving time on the Uintah County matters, which convictions violated his parole. Moreover, the Board retained broad discretion regarding any release decision. *See Lancaster v. Utah Board of Pardons*, 869 P.2d 945, 947 (Utah 1994).

¶39   Likewise, Anderson's assertion that earlier notice of these charges might have resulted in a more favorable global plea agreement rests on conjecture rather than concrete proof. The record does not establish that earlier resolution likely would have reduced Anderson's incarceration or altered the outcome of the Uintah County matters. And the disposition of this case further undermines Anderson's prejudice claim because he was able to negotiate a favorable plea agreement based partly on the delayed prosecution and because ultimately the district court suspended Anderson's prison sentence and placed him on probation.

¶40   In the end, this case presents a weaker showing of prejudice than the showing rejected by the supreme court in *Hintze*. Although the State's initial negligence weighs against it, the remaining *Barker* factors, viewed together and in light of the speculative nature of Anderson's claimed prejudice, do not establish a constitutional speedy trial violation. The district court therefore committed no error in denying Anderson's motion to dismiss.

CONCLUSION

¶41 We conclude that the weight of the evidence in this case does not support dismissal on speedy trial grounds. Although the initial delay caused by the State's negligence was significant, Anderson's claim that he suffered prejudice from the total delay is speculative. Without more, the length and nature of the delay are not sufficiently extraordinary to constitute a speedy trial violation. Affirmed.

———————